

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-13-00307-CV

IN THE INTEREST OF D.D.G., A
CHILD

----------

FROM THE 323RD DISTRICT COURT OF TARRANT COUNTY

----------

## OPINION

----------

Appellant K.H. (Mother) appeals the judgment terminating her parental

rights to D.D.G. (Daniel).[1]   Mother raises two issues.   First, she contends the

evidence is legally and factually insufficient to support the trial court's statutory

endangerment findings and its finding that Mother was the cause of a child being

---

[1]Except for employees of the Department of Family & Protective Services (the Department), we use aliases to protect the identities of the individuals involved in this case.  *See* Tex. R. App. P. 9.8(b)(2).

born addicted to alcohol or a controlled substance. Second, she argues the evidence is legally insufficient to support the trial court's finding that Mother had previously had her parental rights terminated with respect to another child when this termination suit was filed.[2] We affirm.

## I. Background

Mother was thirty-three years old at the time of the final trial on the Department's petition seeking termination of her parental rights. Mother testified she had four children, Daniel, Sarah, Beth, and Jeremiah, and was eight months pregnant with her fifth child. Sarah, Mother's oldest child, was twelve years old and had lived with her grandparents since she was two years old because of Mother's alcohol abuse. Beth and Jeremiah had been placed in foster care because of Mother's methamphetamine use. Mother's rights to Beth and Jeremiah were terminated in February 2013.[3]

Mother began using methamphetamine when she was sixteen or seventeen years old. Mother believed her addiction to methamphetamine began after two to three years of use. Mother smoked methamphetamine throughout her entire pregnancy with Daniel. When Daniel was born on October 14, 2012,

---

[2]Mother does not challenge the sufficiency of the evidence supporting the trial court's finding that termination of her parental rights was in Daniel's best interest under family code section 161.001(2). *See* Tex. Fam. Code Ann. § 161.001(2) (West Supp. 2013). Therefore, we do not address this finding. *See* Tex. R. App. P. 47.1.

[3]*See In re B.N.H.*, No. 02-13-00070-CV, 2013 WL 3968024 (Tex. App.—Fort Worth Aug. 1, 2013, no pet.) (mem. op.).

Mother and Daniel each tested positive for methamphetamine. On October 15, 2012, the Department filed a petition requesting emergency protective orders, temporary managing conservatorship, and termination of both parents' parental rights. The trial court entered an ex parte order for protection naming the Department as the temporary sole managing conservator of Daniel. When Daniel was ready to be released from the hospital, the Department placed Daniel in foster care. Daniel remained in foster care during the pendency of the case.

Mother testified that she was aware Daniel tested positive for methamphetamine at birth, and she attributed the positive test to her methamphetamine use during her pregnancy. Mother claimed she regretted using drugs during her pregnancy with Daniel and stated that if she could do things over again, she would not use drugs during her pregnancy. Even though Daniel was placed in foster care shortly after his birth in October 2012 because of Mother's drug use, Mother was unable to stop using methamphetamine completely. Mother testified that even after her rights to Beth and Jeremiah were terminated in February 2013 because of her methamphetamine use, she continued to use methamphetamine. According to Mother, she quit using methamphetamine five months prior to the August 2013 termination trial in this case.

Mother agreed that her life had gone into a "downward spiral" since she started using methamphetamine and that her drug use led to the loss of her children. Mother testified she had never been in intensive drug treatment, but

3

given her approximately sixteen to seventeen years of drug use, she conceded that she might need intensive drug treatment. Mother stated, however, that she had no current desire to go into drug treatment because she was clean and had not used drugs in the five months preceding trial. Mother could not recall the last time she had taken a drug test, but she admitted to refusing to take a drug test administered by the Department in April 2013 because the Department refused to allow Daniel's father to see Daniel.

R.G. (Father) is Daniel's alleged biological father, and Mother testified Father was also the father of her unborn child. Mother testified that she and Father were in a committed relationship. Because Father was incarcerated at the time of trial, he did not appear in person, but he appeared through his attorney. Mother further testified that Father also smoked methamphetamine and that Father obtained methamphetamine for her.

Mother admitted she did not participate in the parenting classes and the individual counseling required by the Department's court-ordered service plan. To Mother's knowledge, Father also did not participate in individual or family counseling or parenting classes. Mother testified that the Department conservatorship worker for Daniel asked her to participate in domestic violence classes, but she refused. Mother was confused as to why the classes were necessary because she and Father "didn't really fight." Mother also denied a history of family violence between her and Father.

Mother testified she did not attend school beyond the eighth grade and she is unable to read or write due to a learning disability, which makes it difficult for her to get and keep a job. Mother did not provide proof of employment required by the service plan because she claimed she could not work due to a head injury and brain surgery. Mother planned to apply for disability benefits if Daniel was returned to her. Mother had previously attempted to apply for disability benefits, but her addiction to methamphetamine prevented her from completing the process. Mother claimed that even though Father did not have a regular job because he suffered from seizures, he was able to make a living and provide for her by junking and scrapping.

The Department scheduled weekly, one-hour visitation sessions with Daniel for Mother and Father. Mother testified she was often late for visits because she woke up late and had transportation difficulties. Mother stated she was asked by the Department to be early for her visitation sessions to ensure that she would be there before Daniel would be brought to the visit.

Mother testified that she loved Daniel, that Daniel recognized her as his mother, and that she was willing to do whatever it took to get him back, including inpatient drug treatment. Mother testified that she was in love with Father. When asked if her relationship with Father should end in the best interest of Daniel, Mother responded, "I don't know. If it could, yeah. Yeah, I would do anything for [Daniel]." Mother thought she could stay clean around Father, but she was not sure.

5

Tonyia Brown, the Department conservatorship worker for Daniel, testified that Daniel was removed because he tested positive for methamphetamine at birth. Mother admitted to Brown that Mother continued to use methamphetamine during this case. Mother last admitted methamphetamine use to Brown on April 9, 2013. Brown further testified that each time she had Father drug tested, he tested positive for methamphetamine.

Brown testified she developed the service plan for Mother and Father. Brown testified that neither Mother nor Father completed the drug and alcohol assessment, individual counseling, or family counseling required by the plan. Brown confirmed that Mother had not participated in the domestic violence counseling required by the plan and testified that Father had not participated in the batterer's intervention required by the plan. She also stated that the parents did not provide documentation of their employment or where they were living, which was also required by the plan. Brown further testified that Father failed to attend the anger management classes required by the plan. Brown requested that Mother and Father attend voluntary monthly parent support group meetings, but they did not do so. According to Brown, Father refused to complete the service plan because he felt that it was not his fault that Daniel was in foster care. Father felt that Mother was responsible for Daniel being in foster care.

Brown agreed with Mother's testimony that she was required to arrive several hours early for her visits with Daniel to ensure her attendance. Brown testified that Mother did not participate in visitation regularly and did not attend all

6

of her scheduled visits. Brown estimated that Mother missed at least forty percent of her visits with Daniel. Mother told Brown that she overslept or did not have transportation to get to the visits. To assist Mother with her transportation problems, Brown gave Mother bus passes at her request on several occasions. Brown also testified that Father did not regularly attend the visits and did not provide any reasonable explanation for his absences. Father was later prohibited from attending visits at the Department because he threatened to blow up the building after he was refused visitation with Daniel as a result of arriving late for a scheduled visit with Daniel.

Brown testified that Mother and Father were not in a position to meet Daniel's physical and emotional needs. At the time of trial, Daniel was in a foster home with Beth and Jeremiah. Beth and Jeremiah's foster parents were currently planning on adopting Beth and Jeremiah and were inclined to adopt Daniel if Father and Mother's rights were terminated.

At the conclusion of the trial, the court found that Mother (1) knowingly placed or knowingly allowed Daniel to remain in conditions or surroundings that endangered his physical or emotional well-being; (2) engaged in conduct or knowingly placed Daniel with persons who engaged in conduct that endangered his physical or emotional well-being; (3) had her parent-child relationship terminated with respect to another child based on a finding that her conduct was in violation of family code section 161.001(1)(D) or (E), or substantially equivalent provisions of the law of another state; and (4) had been the cause of Daniel

7

being born addicted to alcohol or a controlled substance, other than a controlled substance legally obtained by prescription, as defined by family code section 261.001. Based upon these findings and a finding that termination of Mother's parental rights was in Daniel's best interest, the trial court terminated Mother's parental rights.[4]

## II. Standards of Review

In a termination case, the State seeks not just to limit parental rights but to erase them permanently—to divest the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except the child's right to inherit. Tex. Fam. Code Ann. § 161.206(b) (West 2008); *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). Consequently, "[w]hen the State seeks to sever permanently the relationship between a parent and a child, it must first observe fundamentally fair procedures." *In re E.R.*, 385 S.W.3d 552, 554 (Tex. 2012) (citing *Santosky v. Kramer*, 455 U.S. 745, 747–48, 102 S. Ct. 1388, 1391–92 (1982)). We strictly scrutinize termination proceedings and strictly construe involuntary termination statutes in favor of the parent. *In re E.N.C.*, 384 S.W.3d 796, 802 (Tex. 2012); *E.R.*, 385 S.W.3d at 554–55; *Holick*, 685 S.W.2d at 20–21.

Termination decisions must be supported by clear and convincing evidence. Tex. Fam. Code Ann. § 161.001, § 161.206(a); *E.N.C.*, 384 S.W.3d at 802. Due process demands this heightened standard because "[a] parental

---

[4]The trial court also terminated Father's parental rights. Father is not a party to this appeal.

8

rights termination proceeding encumbers a value 'far more precious than any property right.'" *E.R.*, 385 S.W.3d at 555 (quoting *Santosky*, 455 U.S. at 758–59, 102 S. Ct. at 1397); *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002); *see also E.N.C.*, 384 S.W.3d at 802. Evidence is clear and convincing if it "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007 (West 2008); *E.N.C.*, 384 S.W.3d at 802.

For a trial court to terminate a parent-child relationship, the party seeking termination must establish by clear and convincing evidence that the parent's actions satisfy one ground listed in family code section 161.001(1) and that termination is in the best interest of the child. Tex. Fam. Code Ann. § 161.001; *E.N.C.*, 384 S.W.3d at 803; *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). Both elements must be established; termination may not be based solely on the best interest of the child as determined by the trier of fact. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *In re C.D.E.*, 391 S.W.3d 287, 295 (Tex. App.—Fort Worth 2012, no pet.).

In evaluating the evidence for legal sufficiency in parental termination cases, we determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction that the challenged ground for termination was proven. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). We review all the evidence in the light most favorable to the finding and judgment. *Id.* We resolve any disputed facts in favor of the finding if a reasonable factfinder

9

could have done so. *Id.* We disregard all evidence that a reasonable factfinder could have disbelieved. *Id.* We consider undisputed evidence even if it is contrary to the finding. *Id.* That is, we consider evidence favorable to termination if a reasonable factfinder could, and we disregard contrary evidence unless a reasonable factfinder could not. *See id.* "A lack of evidence does not constitute clear and convincing evidence." *E.N.C.*, 384 S.W.3d at 808.

We cannot weigh witness credibility issues that depend on the appearance and demeanor of the witnesses because that is the factfinder's province. *J.P.B.*, 180 S.W.3d at 573, 574. And even when credibility issues appear in the appellate record, we defer to the factfinder's determinations as long as they are not unreasonable. *Id.* at 573.

In reviewing the evidence for factual sufficiency, we give due deference to the factfinder's findings and do not supplant the judgment with our own. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). We determine whether, on the entire record, a factfinder could reasonably form a firm conviction or belief that Mother violated subsections (D), (E), (M), or (R) of section 161.001(1). *See* Tex. Fam. Code Ann. § 161.001(1)(D), (E), (M), (R); *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002). If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction in the truth of its finding, then the evidence is factually insufficient. *H.R.M.*, 209 S.W.3d at 108.

## III. Discussion

Mother argues in her first issue that the evidence is legally and factually insufficient to support the trial court's statutory endangerment findings under family code sections 161.001(1)(D) and (E) and its finding that she was the cause of Daniel being born addicted to alcohol or a controlled substance under section 161.001(1)(R). Along with a best interest finding, which Mother does not challenge on appeal, a finding of only one ground alleged under section 161.001(1) is sufficient to support a judgment of termination. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003); *In re E.M.N.*, 221 S.W.3d 815, 821 (Tex. App.—Fort Worth 2007, no pet.). We first address Mother's challenge to the trial court's finding that she was the cause of Daniel being born addicted to alcohol or a controlled substance. *See* Tex. Fam. Code Ann. § 161.001(1)(R).

## A. Applicable Law

A parent's parental rights can be terminated upon a finding that the parent has "been the cause of the child being born addicted to alcohol or a controlled substance, other than a controlled substance legally obtained by prescription, as defined by [s]ection 261.001." *See* Tex. Fam. Code Ann. § 161.001(1)(R). A child who is "born addicted to alcohol or a controlled substance" includes a child who: (a) is born to a mother who during her pregnancy used a controlled substance, as defined by chapter 481 of the health and safety code, or alcohol; and (b) after birth, as a result of the mother's use of the controlled substance or alcohol, exhibits the demonstrable presence of alcohol or a controlled substance

11

in the child's bodily fluids. *See* Tex. Fam. Code Ann. § 261.001(8)(A), (B)(iii) (West Supp. 2013). Methamphetamine is considered a controlled substance under chapter 481 of the health and safety code. *See* Tex. Health & Safety Code Ann. §§ 481.002(5) (West Supp. 2013), 481.102(6) (West 2010).

## B. Analysis

Mother claims the evidence was insufficient to establish that Daniel was born addicted to a controlled substance and that she was the cause of Daniel's addiction. In support of this contention, Mother argues the Department failed to present expert testimony to establish the amount of the substance in Daniel's system and to establish that the substance in Daniel's system was a controlled substance, was the result of Mother's drug use, and was not the result of Mother ingesting a drug for which she had a legal prescription.

Mother does not cite, nor have we found, any legal authority for her claim that the Department was required to present expert testimony establishing that Daniel was born addicted to a controlled substance. Under the family code, a child is born addicted to a controlled substance if that child is born to a mother who used a controlled substance during her pregnancy and exhibits the demonstrable presence of a controlled substance in the child's bodily fluids after his birth. *See* Tex. Fam. Code Ann. § 261.001(8)(A), (B)(iii). Proof of the level of the controlled substance in the child's system is not required. *See id.*

At trial, Mother admitted that she smoked methamphetamine during all nine months of her pregnancy with Daniel. She testified that she was aware that

12

Daniel tested positive for methamphetamine at birth, and she attributed that positive test to her methamphetamine use. Mother further testified that Father provided her with methamphetamine. Medical records relating to Daniel's birth introduced at trial establish that both Mother and Daniel tested positive for methamphetamine at Daniel's birth. The CPS conservatorship worker also testified that Daniel tested positive for methamphetamine at birth.

After applying the applicable standards of review, we conclude that the evidence is legally and factually sufficient to support the trial court's finding that Mother was the cause of Daniel being born addicted to a controlled substance. *See In re R.S.O.C.*, No. 02-11-00337-CV, 2012 WL 2923289, at *5 (Tex. App.—Fort Worth July 19, 2012, no pet.) (mem. op.) (upholding termination of mother's parental rights to her three children after Mother testified to using cocaine prior to youngest child's birth and youngest child's medical records indicated child tested positive for cocaine at birth); *In re M.N.O.*, No. 09-02-00070-CV, 2002 WL 31835026, at *2 (Tex. App.—Beaumont Dec. 19, 2002, no pet.) (not designated for publication) (upholding termination of mother's parental rights to all three of her children on ground that she was the cause of her youngest child being born addicted to cocaine and stating that medical records indicating youngest child tested positive for cocaine at birth were legally and factually sufficient evidence to support the trial court's finding under section 161.001(1)(R)). Accordingly, we overrule the portion of Mother's first issue challenging the trial court's finding that

13

Mother was the cause of Daniel being born addicted to alcohol or a controlled substance.

## IV. Conclusion

Having determined the evidence is legally and factually sufficient to support the trial court's finding under section 161.001(1)(R), we need not consider whether sufficient evidence exists to support the trial court's other findings under subpart (1) of the statute challenged by Mother in the remaining portions of her first issue and in her second issue. *See E.M.N.*, 221 S.W.3d at 821; *see also* Tex. R. App. P. 47.1. Accordingly, we affirm the trial court's judgment.

/s/ Anne Gardner
ANNE GARDNER
JUSTICE

PANEL: LIVINGSTON, C.J.; DAUPHINOT and GARDNER, JJ.

DELIVERED: January 23, 2014