

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-14-00802-CV

In the Interest of **V.G.**, Y.G., R.G., M.G., R.G., A.G., and A.G., Children

From the 131st Judicial District Court, Bexar County, Texas
Trial Court No. 2013-PA-02840
Honorable Richard Garcia, Judge Presiding

Opinion by:   Karen Angelini, Justice

Sitting:        Karen Angelini, Justice
                Luz Elena D. Chapa, Justice
                Jason Pulliam, Justice

Delivered and Filed:  April 8, 2015

AFFIRMED

Bethany appeals the trial court's order terminating her parental rights to her child, Allison.[1]

We affirm.

## BACKGROUND

Bethany gave birth to Allison in a hospital. Immediately following her birth, Allison tested positive for cocaine. Allison also exhibited symptoms of withdrawal, including vomiting, jerking movements, and an inability to sleep.

Hospital staff notified the Department of Family and Protective Services, which immediately filed a petition for protection of a child, for conservatorship, and for termination of

---

[1]We use fictitious names to refer to the mother and the child to protect the child's identity. *See* TEX. R. APP. P. 9.8(b)(2).

parental rights. The Department's petition initially included Allison and her six older siblings; however, the Department later nonsuited its action as to the other children. The Department's petition sought termination on fifteen different grounds, including that Bethany had been the cause of Allison being born addicted to a controlled substance in violation of section 161.001(1)(R) of the Texas Family Code. The matter was tried to the court.

### The Trial

Two witnesses testified at trial, a Department caseworker and Bethany.

#### 1. The Caseworker's Testimony

The caseworker testified that Allison tested positive for cocaine at the time of her birth. For the first three or four months of her life, Allison suffered from symptoms of withdrawal, including vomiting, jerking movements, and an inability to sleep. The caseworker attempted to talk to Bethany about her drug use, but Bethany denied a pattern of drug use and said her drug use was a "one-time thing." In order for Allison to have been born addicted to cocaine, Bethany had to have engaged in frequent cocaine use; it could not have been a "one-time thing" as Bethany had claimed. Bethany told the caseworker that the cocaine she used was given to her by her husband.

The caseworker prepared a service plan for Bethany and explained the service plan to her. The caseworker was certain that Bethany understood the service plan, which required Bethany to participate in drug assessment and treatment, parenting classes, therapy sessions, a psychological assessment, random drug testing, domestic violence classes, and parent-child visits. The Department started in-home individual counseling for Bethany, but the counseling ceased after Bethany left town for a month and a half. The Department also arranged for in-home parenting classes for Bethany, but this referral was made during the period that Bethany was out of town and the coordinator of the classes eventually stopped trying to contact her. Bethany submitted to ten to twelve drug tests during the course of the case, all of which were negative. Bethany did not

participate in drug assessment, drug treatment, a psychological assessment, or parenting classes. In fact, Bethany did not complete any component of the service plan. The caseworker was somewhat skeptical of Bethany's claim that she was unable to find transportation to engage in the services on her service plan because Bethany had two older children who were able to provide her transportation to other places.

About a month before trial, Bethany's visits with Allison ceased. The court ordered the visits stopped because Allison would cry for the entire visit.

By the time of trial, Allison was almost ten months old. Allison was no longer suffering from withdrawal symptoms, but she did have some motor skill delays and was receiving physical therapy to help her walk.

Allison had been placed with a foster family and this placement was stable. The Department's long-term goal was adoption by the foster family. The caseworker acknowledged that Bethany had a home, but she also stated that she had not been able to visit this home because Bethany's husband had made threats to the Department.

Finally, the caseworker believed that termination of Bethany's parental rights was in Allison's best interest because none of the original circumstances that had caused Allison to come into the Department's care had been resolved. The caseworker felt it was in Allison's best interest to remain in her current, stable placement.

### 2. *Bethany's Testimony*

Bethany testified that the last time she used cocaine was when she gave birth to Allison. Bethany indicated that this was the only time she used cocaine during her pregnancy with Allison. Bethany's husband had provided her the cocaine. Bethany explained that she had used cocaine while she was pregnant because she was "desperate" "of things that [she] was feeling and [she] was not able to speak to anyone." Bethany acknowledged that the Department offered her a service

plan to help her with these issues. Bethany indicated she did not take the steps necessary to help herself get better because she did not have anyone to take her to appointments, except for her daughters. Bethany pointed out that her daughters had their own children so they could not take her to appointments all the time. Bethany admitted that Allison was not the only child that Bethany had given birth to who was born drug-positive; one of Allison's older siblings was also born drug-positive. Nevertheless, Bethany denied that she had a pattern of using drugs while she was pregnant. Bethany did not believe that she had a problem with drugs. Bethany said she was aware of the suffering that Allison went through because of Bethany's drug use. Bethany's husband had moved out of their home about a month before the trial, but he was still supporting Bethany financially. Bethany felt that she would be able to care for Allison if she was returned to her. Bethany was aware of Allison's behavior during and after their visits, including Allison's uncontrollable crying. Bethany said she would deal with Allison's behavior with patience and she would "give it time." Bethany also stated that she takes care of her other children, all of whom were in school.

### The Termination Order

Thereafter, the trial court signed an order terminating Bethany's parental rights on six different grounds: (1) that Bethany knowingly placed the child or allowed the child to remain in conditions or surroundings that endangered her physical or emotional well-being [§ 161.001(1)(D)]; (2) that Bethany engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangered her physical or emotional well-being [§ 161.001(1)(E)]; (3) that Bethany knowingly abandoned the child who had been in the temporary managing conservatorship of the Department for six months [§ 161.001(1)(N)]; (4) that Bethany failed to comply with provisions of a court order that established the actions necessary for her to obtain the return of the child [§ 161.001(1)(O)]; (5) that Bethany used a controlled substance in a manner

that endangered the health or safety of the child [§ 161.001(1)(P)]; and (6) that Bethany had been the cause of the child being born addicted to a controlled substance [§ 161.001(1)(R)]. The trial court also found that termination of Bethany's parental rights was in the child's best interest.

*The Appeal*

On appeal, Bethany argues that the evidence was legally and factually insufficient to support the trial court's findings as to each of the grounds for termination listed in the trial court's order and to support the trial court's finding that termination was in the child's best interest.

### PARENTAL TERMINATION REQUIREMENTS

Termination of parental rights under section 161.001 of the Texas Family Code requires proof by clear and convincing evidence that the parent committed one of the acts or omissions listed in section 161.001(1)(A)-(T) and that termination is in the child's best interest. TEX. FAM. CODE ANN. § 161.001(1), (2) (West 2014); *In the Interest of A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). Only one predicate finding under section 161.001(1) is necessary to support a termination order when there is also a finding that termination is in the child's best interest. *A.V.*, 113 S.W.3d at 362.

In determining the child's best interest, courts consider the following non-exclusive factors: (1) the emotional and physical needs of the child now and in the future; (2) the emotional and physical danger to the child now and in the future; (3) the parental abilities of the individuals seeking custody; (4) the programs available to assist these individuals to promote the best interest of the child; (5) the plans for the child by these individuals or by the agency seeking custody; (6) the stability of the home or proposed placement; (7) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (8) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976); *see also In the Interest of C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). There is no requirement that evidence be

presented as to each of these factors. *See C.H.*, 89 S.W.3d at 27. "The absence of evidence about some of these considerations would not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest, particularly if the evidence were undisputed that the parental relationship endangered the safety of the child." *Id*. The same evidence proving acts or omissions under section 161.001(1) of the Texas Family Code may be probative of the child's best interest. *Id*. at 28.

### STANDARDS OF REVIEW

A review of legal sufficiency in a case with a clear and convincing evidence standard requires a court to "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In the Interest of J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. *Id*. We disregard all evidence that a reasonable factfinder could have disbelieved or found to be incredible. *Id*. If we determine that no reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, then we must conclude the evidence is legally insufficient. *Id*.

In a factual sufficiency review, we give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing. *Id.* Evidence is factually sufficient under a clear and convincing evidence standard if "a fact finder could form a firm belief or conviction about the truth of the [Department's] allegations." *C.H.*, 89 S.W.3d at 25. We must consider whether disputed evidence is such that a reasonable factfinder could not have resolved that evidence in favor of its finding. *J.F.C.*, 96 S.W.3d at 266. If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *Id*.

**DISCUSSION**

A court may order termination of the parent-child relationship if it finds by clear and convincing evidence that the parent has been the cause of the child being born addicted to alcohol or a controlled substance, other than a controlled substance legally obtained by prescription, as defined by section 261.001 of the Texas Family Code. TEX. FAM. CODE ANN. § 161.001(1)(R). Under section 261.001, "born addicted to [] a controlled substance" means a child: (a) who is born to a mother who during the pregnancy used a controlled substance as defined by chapter 481 of the Texas Health and Safety Code; and (b) who, after birth as a result of the mother's use of the controlled substance, experiences observable withdrawal from the controlled substance, or exhibits observable or harmful effects in the child's physical appearance or functioning. *See* TEX. FAM. CODE ANN. § 261.001(8)(A),(B)(i),(ii) (West 2014). Cocaine is a controlled substance under chapter 481 of the Texas Health and Safety Code. TEX. HEALTH & SAFETY CODE ANN. § 481.102(3)(D) (West 2010).

As a preliminary matter, Bethany argues that subsection 161.001(1)(R) should not be considered as a ground for termination of her parental rights because the Department failed to request termination on this ground at trial. We disagree. The Department included subsection 161.001(1)(R) as a ground for termination in its petition. And, both the evidence and the argument presented at trial demonstrated that the Department was seeking termination on this ground. In fact, in closing argument counsel for the Department stated, "We would request termination of mom and dad on "D" and "E" and the ground of having a baby born addicted to a controlled substance." Bethany also argues that subsection 161.001(1)(R) should not be considered as a termination ground because it was not included in the trial judge's notes. Again, we disagree. A trial judge's notes are for his or her own convenience and form no part of the record. *State v. Fuller*, No. 04-96-00898-CR, 1997 WL 136541, at *1 (Tex. App.—San Antonio, no pet.) (not

designated for publication); *First Nat'l Bank of Giddings, Texas v. Birnbaum*, 826 S.W.2d 189, 190 (Tex. App.—Austin 1992, no writ). The termination order controls here and it includes subsection 161.001(1)(R) as one of the grounds for termination.

The crux of Bethany's argument is that the evidence was insufficient to prove that Allison was born addicted to cocaine and that Bethany was the cause of the addiction. Bethany complains of the Department's failure to present any expert testimony or documentary evidence showing that she was the cause of Allison's positive drug test. According to Bethany, the record is "silent" as to whether Allison was born addicted to cocaine because there was only "vague testimony" from the Department caseworker that Allison suffered from symptoms of withdrawal for several months. Bethany further complains that there was no evidence or expert testimony to show that the withdrawal symptoms identified by the caseworker—vomiting, jerking movements, and an inability to sleep—were in fact symptoms of cocaine addiction.

Contrary to Bethany's arguments, the Department was not required to present expert testimony that Allison was born addicted to a controlled substance. *See In the Interest of D.D.G.*, 423 S.W.3d 468, 474 (Tex. App.—Fort Worth 2014, no pet.) (rejecting an argument that expert testimony was required to establish that a child was born addicted to a controlled substance). And, Bethany directs us to no authority for her claim that the Department was required to present documentary evidence to prove that Allison was born addicted to cocaine. In fact, the Texas Family Code provides that a child is born addicted to a controlled substance if that child is born to a mother who used a controlled substance during her pregnancy, and after birth, as a result of the mother's use of the controlled substance, experiences observable withdrawal from the controlled substance, or exhibits observable or harmful effects in the child's physical appearance or functioning. *See* TEX. FAM. CODE ANN. § 261.001(8)(A),(B)(i),(ii).

In this case, Bethany's use of cocaine during her pregnancy was undisputed. In her trial testimony, Bethany admitted that she used cocaine during her pregnancy with Allison. Bethany also testified that she had given birth to another child who was drug-positive. Finally, Bethany acknowledged that Allison had suffered because of Bethany's cocaine use. Furthermore, the caseworker testified that Allison had exhibited observable symptoms of withdrawal for three to fourth months after her birth, and that Allison had some motor skill delays and was currently receiving physical therapy to help her walk. Given this evidence, a reasonable factfinder could have found that Bethany was the cause of Allison being born addicted to a controlled substance. Considering the evidence under the applicable standards of review, we conclude that the trial court could have formed a firm belief or conviction that Bethany violated subsection 161.001(1)(R). *See C.H.*, 89 S.W.3d at 25. We, therefore, conclude the evidence was legally and factually sufficient to support the trial court's finding that Bethany committed one of the statutory grounds for involuntary termination under section 161.001 of the Texas Family Code.[2]

Next, Bethany argues the evidence was insufficient to show that termination was in Allison's best interest. According to Bethany, the only evidence presented as to the child's best interest was evidence of the Department's long-term goal of a non-relative adoption. As previously noted, the Department was not required to present evidence as to each and every *Holley* factor. *See C.H.*, 89 S.W.3d at 27. Nevertheless, the evidence in this case addressed multiple *Holley* factors. 544 S.W.2d at 371-72. First, the evidence showed that Bethany's cocaine use endangered Allison's health and physical well-being. Because of Bethany's cocaine use, Allison suffered withdrawal

---

[2]Because we have concluded that the evidence was legally and factually sufficient to support termination of Bethany's parental rights under subsection 161.001(1)(R), we need not address Bethany's remaining complaints regarding the sufficiency of the evidence under subsections 161.001(1)(D),(E),(N),(O), and (P). *See A.V.*, 113 S.W.3d at 362 (recognizing that a single predicate finding is sufficient to support termination when there is also a finding that termination is in the child's best interest); TEX. R. APP. P. 47.1 (requiring opinions to address only those issues necessary to final disposition).

symptoms for several months and was still suffering from some motor skill delays at the time of trial. Second, the evidence showed Bethany's parental abilities were lacking. Allison was Bethany's second child born addicted to cocaine. Bethany claimed that the reason she used cocaine during her pregnancy was because she felt "desperate" and was unable to talk to anyone about her feelings. Yet, even at trial, Bethany minimized the nature of her problems. The evidence also showed Bethany's visits with Allison were stopped because Allison cried uncontrollably during and after the visits. Third, the evidence showed that although services were made available to help Bethany with her psychological and drug-related problems and her parenting skills, Bethany failed to take advantage of these services. In fact, Bethany failed to complete any component of her service plan. Considering this evidence under the applicable standards of review, we conclude that the trial court could have formed a firm belief or conviction that the termination of Bethany's parental rights was in Allison's best interest. We, therefore, conclude the evidence was legally and factually sufficient to support the trial court's finding that termination of parental rights was in the child's best interest.

## CONCLUSION

The trial court's termination order is affirmed.

Karen Angelini, Justice