

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-22-00292-CV

_____

IN THE INTEREST OF O.P., A CHILD

On Appeal from County Court at Law No. 1
Wichita County, Texas
Trial Court No. CCL1-CP2021-1163

Before Bassel, Womack, and Walker, JJ.
Memorandum Opinion by Justice Walker

## MEMORANDUM OPINION

Appellant D.P. (Father) appeals the trial court's order terminating his parental rights to his minor child O.P.[1] The trial court found that the Department of Family and Protective Services had proved at least one conduct-based ground for termination and that termination was in O.P.'s best interest.[2] *See* Tex. Fam. Code Ann. § 161.001(b)(1)(N), (Q), (b)(2). Based on these findings, the trial court terminated Father's parental rights and awarded permanent managing conservatorship to O.P.'s mother, M.M. (Mother). On appeal, Father argues that the evidence is legally and factually insufficient to support termination of his parental rights. We will affirm.

## I. BACKGROUND

O.P. was six years old at the time of trial. Mother and Father were not married—nor were they even a couple—at the time O.P. was born, and Mother, Father, and O.P. have never lived together as a family.

In June 2021, the Department filed a petition seeking, among other things, the termination of Father's parental rights to O.P. The trial court named the Department as O.P.'s temporary managing conservator.

---

[1] To protect the identity of the child, we use aliases to refer to her, her parents, and others connected to this case. *See* Tex. Fam. Code Ann. § 109.002(d); Tex. R. App. P. 9.8(b)(2).

[2] As detailed below, the trial court referred this case to an associate judge, who, following a bench trial, found the evidence sufficient to terminate Father's parental rights pursuant to both Subsections N and Q of Section 161.001(b)(1). Upon de novo review, the referring court found the evidence sufficient pursuant to Subsection Q but did not address Subsection N.

Father has been incarcerated for the entirety of this case. He pleaded guilty to three counts of third-degree felony forcible sexual abuse in Utah,[3] and in June 2019, he was sentenced to a total of fifteen years in prison.[4]

At trial, Father testified that his minimum sentence is fifty-eight months and that his "guideline release date" is October 12, 2023, though he admitted that it was not certain that he would be released on this date and that he could be released sooner or later. According to the records provided by the Utah Department of Corrections, Father has a "tentative date" to appear before the Board of Parole and Pardons in February 2023. Father claimed that "[a]ll [he had] to do to get out at this point is complete the core program for why [he is in prison]" and that he planned to begin the "core program" as soon as he was transferred to "the new facility that just opened." He stated that his transfer to the new facility "should [occur] before July 4th of [2022]" and that the "core program" should only take him approximately six months to complete.

Victoria Aubin, O.P.'s permanency supervisor, testified that Father had not provided any information indicating that he could care for O.P. She stated that Father never completed a child caregiver resource form or requested any home studies. She further testified that Father had not shown that he could provide O.P.

---

[3]At the termination trial in this case, Father claimed that he did not sign the plea paperwork and that his signature was forged.

[4]Father received three separate five-year sentences, which are to run consecutively for a total of fifteen years.

with a safe environment or that he had anyone to care for O.P. during his incarceration.

At trial, Father admitted that he was unable to provide financially for O.P. while he was incarcerated. Moreover, he testified that because he was disabled and suffered from epilepsy, he had difficulty finding a job even before his incarceration.

Mother testified that she is in a stable relationship with her current partner and that they plan to get married. She indicated that her partner has a father–daughter relationship with O.P., that he intends to adopt her, and that such an adoption would be "a wonderful thing" for O.P. Mother expressed that "it would not be beneficial" for O.P. to have a continued relationship with Father because of his temper and controlling nature.

The associate judge[5] who presided over the trial found by clear and convincing evidence that termination of Father's relationship with O.P. was in O.P.'s best interest and that Father had

> constructively abandoned [O.P.] and (1) the Department ha[d] made reasonable efforts to return [O.P.] to [Father]; (2) [Father] ha[d] not regularly visited or maintained significant contact with [O.P.]; and (3) [Father] ha[d] demonstrated an inability to provide [O.P.] with a safe environment, pursuant to § 161.001(b)(1)(N), Texas Family Code; [and]
>
> knowingly engaged in criminal conduct that has resulted in [Father's] conviction of an offense and confinement or imprisonment and inability

---

[5]*See* Tex. Fam. Code Ann. § 201.005(a) (allowing for the referral of certain cases under the Family Code, including suits affecting the parent–child relationship, to associate judges).

4

to care for [O.P.] for not less than two years from the date of filing the petition, pursuant to § 161.001(b)(1)(Q), Texas Family Code.

*See* Tex. Fam. Code Ann. § 161.001(b). Based on these findings, the associate judge terminated Father's parental rights to O.P. and named Mother O.P.'s permanent managing conservator.

Father requested that the referring court conduct a de novo review of the associate judge's findings. *See* Tex. Fam. Code Ann. § 201.015. After de novo review, the referring court entered an order affirming the ruling of the associate judge and finding by clear and convincing evidence (1) that termination was in O.P.'s best interest and (2) that the requirements for termination under Section 161.001(b)(1)(Q) had been satisfied. This appeal followed.

## II. DISCUSSION

In two issues, Father argues that the evidence is insufficient to support the associate judge's and referring court's findings that the Department had established grounds for terminating Father's parental rights under Subsections N and Q of Texas Family Code Section 161.001(b)(1).[6] In our resolution of this appeal, we first address Father's second issue, and since we find it dispositive, we need not address his first issue. *See* Tex. R. App. P. 47.1; *Giant Res., LP v. Lonestar Res., Inc.*, No. 02-21-00349-CV, 2022 WL 2840265, at *4 (Tex. App.—Fort Worth July 21, 2022, no pet.). We will affirm.

---

[6]As noted above, the referring court did not address whether the requirements of Subsection N had been satisfied.

5

## A. SUFFICIENCY OF THE EVIDENCE

For a trial court to terminate a parent–child relationship, the party seeking termination must prove two elements by clear and convincing evidence: (1) that the parent's actions satisfy one ground listed in Family Code Section 161.001(b)(1); and (2) that termination is in the child's best interest. Tex. Fam. Code Ann. § 161.001(b); *In re Z.N.*, 602 S.W.3d 541, 545 (Tex. 2020). Evidence is clear and convincing if it "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007; *Z.N.*, 602 S.W.3d at 545.

Due process demands the heightened standard of clear and convincing evidence because "[a] parental rights termination proceeding encumbers a value 'far more precious than any property right.'" *In re E.R.*, 385 S.W.3d 552, 555 (Tex. 2012) (quoting *Santosky v. Kramer*, 455 U.S. 745, 747–48, 102 S. Ct. 1388, 1391–92 (1982)); *J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002); *see also In re E.N.C.*, 384 S.W.3d 796, 802 (Tex. 2012). In a termination case, the State seeks not just to limit parental rights but to erase them permanently—to divest the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except the child's right to inherit. Tex. Fam. Code Ann. § 161.206(b); *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). Consequently, "[w]hen the State seeks to sever permanently the relationship between a parent and a child, it must first observe fundamentally fair procedures." *E.R.*, 385 S.W.3d at 554 (citing *Santosky*, 455 U.S. at 758–59, 102 S. Ct. at 1397). For the

same reason, we carefully scrutinize termination proceedings and strictly construe involuntary-termination statutes in the parent's favor. *E.N.C.*, 384 S.W.3d at 802; *E.R.*, 385 S.W.3d at 563; *Holick*, 685 S.W.2d at 20–21.

To determine whether the evidence is legally sufficient in parental-termination cases, we look at all the evidence in the light most favorable to the challenged finding to determine whether a reasonable factfinder could form a firm belief or conviction that the finding is true. *Z.N.*, 602 S.W.3d at 545. The factfinder may draw inferences, but they must be reasonable and logical. *Id.* We assume that the factfinder settled any evidentiary conflicts in favor of its finding if a reasonable factfinder could have done so. *Id.* We disregard all evidence that a reasonable factfinder could have disbelieved, and we consider undisputed evidence even if it is contrary to the finding. *Id.*; *In re J.F.C.*, 96 S.W.3d at 266. That is, we consider evidence favorable to the finding if a reasonable factfinder could, and we disregard contrary evidence unless a reasonable factfinder could not. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). The factfinder is the sole judge of the witnesses' credibility and demeanor. *In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009).

We must perform "an exacting review of the entire record" in determining the factual sufficiency of the evidence supporting the termination of a parent–child relationship. *In re A.B.*, 437 S.W.3d 498, 500 (Tex. 2014). Nevertheless, we give due deference to the factfinder's findings and do not supplant them with our own. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). We review the whole record to decide

7

whether a factfinder could reasonably form a firm conviction or belief that the Department proved one or more of the conduct-specific grounds on which the termination was based and that the termination of the parent–child relationship would be in the children's best interest. Tex. Fam. Code Ann. § 161.001(b); *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002). If the factfinder reasonably could form such a firm conviction or belief, then the evidence is factually sufficient. *C.H.*, 89 S.W.3d at 18–19.

### B. ANALYSIS OF THE SUBSECTION Q GROUND FOR TERMINATION

"Subsection (Q) permits termination of parental rights on clear and convincing evidence that a parent 'knowingly engaged in criminal conduct that has resulted in the parent's: (i) conviction of an offense; and (ii) confinement or imprisonment and inability to care for the child for not less than two years from the date of filing the petition.'" *In re J.G.S.*, 574 S.W.3d 101, 118 (Tex. App.—Houston [1st Dist.] 2019, pet. denied) (quoting Tex. Fam. Code Ann. § 161.001(b)(1)(Q)). "We read Subsection Q prospectively, focusing on the parent's future imprisonment and inability to care for the child, to ensure that the child will not be neglected while the parent serves his sentence and is unable to provide for his child during that time." *In re G.S.*, No. 02-19-00390-CV, 2020 WL 1294925, at *4 (Tex. App.—Fort Worth Mar. 19, 2020, pet. denied) (mem. op.) (citing *In re A.V.*, 113 S.W.3d 355, 360–61 (Tex. 2003)).

Here, Father does not dispute that he knowingly engaged in criminal conduct that has resulted in his conviction of an offense. Rather, Father argues only that the

evidence is insufficient to support the trial court's findings that he would be (1) confined or imprisoned and (2) unable to care for O.P. for at least two years from the date the petition was filed.

### 1. Confinement for Not Less Than Two Years

For purposes of Subsection Q, the length of the sentence is not necessarily dispositive of when the parent will in fact be released from prison, and evidence of parole is relevant to this issue. *Id.* However, "[m]ere introduction of parole-related evidence . . . does not prevent a factfinder from forming a firm conviction or belief that the parent will remain incarcerated for at least two years [because p]arole decisions are inherently speculative." *H.R.M.*, 209 S.W.3d at 108; *see In re A.R.*, No. 02-14-00237-CV, 2015 WL 222496, at *3–4 (Tex. App.—Fort Worth Jan. 15, 2015, no pet.) (mem. op.). A factfinder "is 'free to disregard' the parent's parole-related testimony, especially when it constitutes 'barely more than conjecture.'" *In re C.L.E.E.G.*, 639 S.W.3d 696, 699 (Tex. 2022) (quoting *H.R.M.*, 209 S.W.3d at 109).

Here, the Department filed its amended petition on June 21, 2021. Thus, to satisfy the confinement prong of Subsection Q, the Department had to show that Father would be in prison through at least June 21, 2023. As noted above, on June 4, 2019, Father received three consecutive five-year prison sentences after pleading guilty to three counts of sexual assault in Utah. Based on the length of his sentence and the

9

credit he received for time already served,[7] Father could remain incarcerated until December 11, 2033, which is far beyond the two-year anniversary of the petition date.

Despite the length of his sentence, Father asserts that the trial court lacked sufficient evidence to find that he would be confined through at least June 21, 2023, because he presented evidence that he might be released sooner. Father points to the fact that he has a "tentative date to see the Board of Parole and Pardons" in February 2023. He testified that all he needed to do to get out of prison was to complete the "core program" and that the program "should" last six months. He claimed that he would be able to begin the program "[a]s soon as" he was transferred to his new facility, which "should" be before July 4, 2022.

While Father's parole-related evidence is relevant, it is also inherently speculative. *See H.R.M.*, 209 S.W.3d at 108. Father acknowledged that his minimum sentence was fifty-eight months, making his release date October 12, 2023—nearly four months beyond Subsection Q's two-year deadline. While Father stated that he could be released earlier, he also admitted that he could be released later. Indeed, in his briefing before this court, Father concedes that "it is unclear when [he] will be released from prison." Since Father's evidence suggesting he might be released within two years of the petition date constitutes "barely more than conjecture," the trial court was free to disregard it. *See C.L.E.E.G.*, 639 S.W.3d at 699.

---

[7]At the time he was sentenced, Father received credit for 175 days previously served.

10

Because Father's early release is uncertain and his fifteen-year combined sentence extends beyond the relevant two-year period, a factfinder could have formed a firm belief or conviction that Father would remain incarcerated for two years following the petition date. *See H.R.M.*, 209 S.W.3d at 108; *A.R.*, 2015 WL 222496, at *4; *In re S.J.P.P.*, No. 07-10-00476-CV, 2011 WL 3652765, at *3 (Tex. App.—Amarillo Aug. 19, 2011, no pet.) (mem. op.). Thus, we conclude that the evidence is both legally and factually sufficient to support the trial court's finding. *See Z.N.*, 602 S.W.3d at 545 (addressing standard for legal sufficiency); *C.H.*, 89 S.W.3d at 18–19 (addressing standard for factual sufficiency).

## 2. Inability to Care for O.P.

Subsection Q requires finding not only that the parent will be incarcerated for at least two years from the petition date but also that he will be unable to care for the child during this time period. *H.R.M.*, 209 S.W.3d at 110. Absent evidence that a non-incarcerated parent (or other person) has agreed to provide support for the child on the incarcerated parent's behalf, merely leaving a child with a non-incarcerated parent does not constitute the ability to provide care. *Id.* In *H.R.M.*, the evidence showed that the incarcerated father had not financially provided for the child following his divorce from the child's mother and that no one had testified to a willingness to care for the child on the father's behalf during his incarceration. *Id.* The Texas Supreme Court held that the father's obligations to care for the child were

11

not satisfied by merely allowing the child's sole managing conservator to be the child's exclusive caregiver. *Id.*

While O.P. is currently being cared for by Mother, Father made no claim at trial that Mother has been providing care for O.P. on Father's behalf. *See H.R.M.*, 209 S.W.3d at 110; *see also J.G.S.*, 574 S.W.3d at 119 ("[A] parent relying on another's provision of care to avoid termination under Subsection (Q) must demonstrate that the care is being provided on behalf of the parent, not out of an existing duty or inclination to care for the child."). Rather, Mother testified that she had not spoken to Father since he was incarcerated and that allowing Father to have a continued relationship with O.P. would not be beneficial for O.P.

Further, Father admitted at trial that he does not have the ability to provide financial support to O.P. while he is incarcerated. He testified that he had difficulty finding a job even before he was imprisoned. Father also offered no evidence showing that he had arranged for O.P.'s care while he is in prison. Indeed, Aubin, O.P.'s permanency supervisor, testified that Father had failed to provide her with the names of any potential caregivers for O.P. Though Father claimed that he had provided "Ms. Sarah"[8] as a potential caregiver, on cross-examination he admitted that he had not made any arrangements for her to care for O.P.

Viewing the evidence in the light most favorable to the trial court's finding, we conclude that a reasonable factfinder could have formed a firm belief or conviction

[8] *See supra* note 1.

12

that Father will be unable to care for O.P. during the two-year period commencing on the petition date. *See Z.N.*, 602 S.W.3d at 545; *J.P.B.*, 180 S.W.3d at 573. Accordingly, the evidence is legally sufficient to support this finding. Further, based on the evidence and giving due deference to the factfinder's findings, we conclude that the evidence is likewise factually sufficient to support the trial court's finding. *See H.R.M.*, 209 S.W.3d at 108; *C.H.*, 89 S.W.3d at 18–19.

## C. REMAINING GROUNDS FOR TERMINATION

Where, as here, the Department seeks to terminate a party's parental rights based on multiple conduct-specific grounds, we must uphold the trial court's termination order if any of those grounds are supported by evidence in the record. *See* Tex. Fam. Code Ann. § 161.001(b)(1); *In re D.D.G.*, 423 S.W.3d 468, 474 (Tex. App.—Fort Worth 2014, no pet.); *In re D.R.*, No. 02-06-00146-CV, 2007 WL 174351, at *6 (Tex. App.—Fort Worth Jan. 25, 2007, no pet.) (mem. op.); *In re D.M.*, 58 S.W.3d 801, 813 (Tex. App.—Fort Worth 2001, no. pet.); *In re S.F.*, 32 S.W.3d 318, 320 (Tex. App.—San Antonio 2000, no pet.). Because we have concluded that there is both legally and factually sufficient evidence to support the trial court's findings under Subsection Q, we need not address Father's first issue regarding the sufficiency of the evidence under Subsection N. *See A.V.*, 113 S.W.3d at 362; *D.D.G.*, 423 S.W.3d at 475; *D.M.*, 58 S.W.3d at 813; *see also* Tex. R. App. P. 47.1.

Further, while Father challenged the sufficiency of the evidence to support the associate judge's finding that termination was in O.P.'s best interest in his request for

13

de novo review in the trial court, Father has not challenged the trial court's best interest finding in his appeal to this court. Therefore, we do not address this finding. *See D.D.G.*, 423 S.W.3d at 470 n.2; *In re S.T.*, 263 S.W.3d 394, 403 (Tex. App.—Waco 2008, pet. denied); *see also Nixon v. Attorney General*, No. 05-17-01080-CV, 2018 WL 4767149, at *1 n.1 (Tex. App.—Dallas Oct. 3, 2018, pet. denied) (mem. op.) ("We address the issues [appellant] identifies as such in the "Issues [P]resented for Review" section of his brief. To the extent that [appellant] intended to raise other issues, they are forfeited for inadequate briefing.").

## III. CONCLUSION

Having determined that the evidence is legally and factually sufficient to support the trial court's findings under Section 161.001(b)(1)(Q), we affirm the trial court's judgment terminating Father's parental rights.

/s/ Brian Walker

Brian Walker
Justice

Delivered: December 8, 2022

14