In The
*Court of Appeals*
*Ninth District of Texas at Beaumont*
**NO. 09-17-00065-CV**

**IN THE INTEREST OF L.S., C.S., A.S.R., AND A.S.R.**

**On Appeal from the 279th District Court**
**Jefferson County, Texas**
**Trial Cause No. F-226,375**

**MEMORANDUM OPINION**

The trial court terminated all parental rights to the minor children, L.S., C.S., A.S.R.1, and A.S.R.2.[1] Appellant T.S., the mother of all four children, appeals the termination.[2] In six points of error, T.S. ("Mother") contends that the evidence was legally and factually insufficient to support termination of her parental rights under

_____

[1] To protect the identity of the minors, we have not used the names of the children, parents, or other family members. *See* Tex. R. App. P. 9.8(a), (b).

[2] Neither father of the respective children has appealed the termination of his parental rights.

1

any of the statutory predicate grounds listed in the termination order, or to support that termination was in the best interest of the children. We affirm.

## I. Background

The Department of Family and Protective Services (the "Department") has been involved with Mother several times over the years preceding this suit as a result of Mother's drug use. Mother began using drugs when she was sixteen years old. She used the drug PCP, in September 2009, while she was pregnant with her oldest child, L.S. The Department later became involved with Mother as a result of her testing positive for PCP while caring for L.S. Mother also used drugs through her entire pregnancy with her next child, C.S., and the Department became involved again when that child's urine and meconium tested positive for PCP at birth in December 2014. The Department became involved with Mother again in November 2015, when she gave birth to twins, A.R.S.1 and A.R.S.2, both of whom tested positive for controlled substances in urine and meconium. As a result of this, the Department asked that all of the children be placed with family members, and all four were placed with their maternal grandmother, who was given a power of attorney over them. The Department then closed its investigation in December 2015.

In February 2016, the Department received a new report that Mother had unsupervised possession of all four children. Upon investigation, the Department

confirmed that, despite knowledge of Mother's extensive drug problem, the maternal grandmother had allowed the children back into Mother's care while the grandmother went out of town for a family emergency. The Department sought removal of the children after Mother appeared to be under the influence of drugs at a Family Team Meeting and tested positive for PCP, marijuana, and cocaine. The trial court entered an ex parte order for protection naming the Department as the temporary sole managing conservator of the children, and then continued the Department as the temporary sole managing conservator after a contested adversary hearing. The children were eventually placed with Mother's stepfather after spending the first few months of the case in foster care.

The Department developed family service plans for each parent, which set forth the various tasks required of each parent in order to obtain the return of the children, and those service plans were approved and made orders of the trial court. In April 2016, Mother was arrested and charged with possession of a controlled substance, for which she eventually received deferred adjudication. Through the pendency of the case, Mother completed a parenting class and worked some of the services on her family service plan, but she did not complete the service plan. She also continued to use drugs, testing positive on at least nine occasions between the time of the investigation and the date of trial.

On January 5, 2017, the Court began the bench trial in this cause. At that time, the parental rights of both fathers were terminated, and the court granted a continuance for Mother. Mother admitted to using drugs after the hearing and tested positive on February 7, 2017, and again on February 21, 2017. The court continued the proceeding against Mother on February 23, 2017. At the conclusion of the hearing, the court terminated Mother's parental rights after finding by clear and convincing evidence that Mother had:

> knowingly placed or knowingly allowed the child(ren) to remain in conditions or surroundings which endanger the physical or emotional well-being of the child(ren);

> engaged in conduct or knowingly placed the child(ren) with persons who engaged in conduct which endangers the physical or emotional well-being of the child(ren);

> . . .

> failed to comply with the provisions of a court order that specifically established the actions necessary for the mother to obtain the return of the child(ren) who has/have been in the permanent or temporary managing conservatorship of the Department of Protective and Regulatory Services for not less than nine months as a result of the child(ren)'s removal from the parent under Chapter 262 for the abuse or neglect of the child(ren);

> used a controlled substance, as defined by Chapter 481, Health and Safety Code, in a manner that endangered the health or safety of the chi1d(ren), and (1) failed to complete a court-ordered substance abuse treatment program; or (2) after completion of a court-ordered substance abuse treatment program, continued to abuse a controlled substance;

4

[and] . . .

been the cause of the child(ren) being born addicted to alcohol or a controlled substance, other than a controlled substance legally obtained by prescription, as defined by § 261.001, Texas Family Code.

The court further found by clear and convincing evidence that termination of Mother's parental rights was in the best interest of the children.

## II. Standard of Review

The Family Code provides that parental rights may be terminated if the parent has committed an act prohibited by section 161.001(b)(1) and that termination is in the best interest of the child. Tex. Fam. Code Ann. § 161.001(b)(1), (2) (West Supp. 2016). Termination of parental rights is a serious matter, as it divests both "parent and child of all legal rights, privileges, duties, and powers normally existing between them, except the child's right to inherit." *In re D.D.G.*, 423 S.W.3d 468, 472 (Tex. App.—Fort Worth 2014, no pet). Because of the constitutional magnitude of parental rights, and the severity and permanency of proceedings to terminate rights, the burden of proof at trial in such proceedings is heightened to the clear and convincing standard. *Holick v. Smith,* 685 S.W.2d 18, 20 (Tex. 1985); *In re D.R.A.*, 374 S.W.3d 528, 531 (Tex. App.—Houston [14th Dist.] 2012, no pet.). This standard is defined as "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established."

5

Tex. Fam. Code Ann. § 101.007 (West 2014). This heightened burden of proof required at trial results in a heightened standard of review on appeal. *In re D.R.A.*, 374 S.W.3d at 531.

In this case, Mother challenges both the legal and factual sufficiency of the trial court's findings. There is a fine distinction in how evidence is reviewed under the legal and factual sufficiency standards in a parental termination case. *In re J.F.C.,* 96 S.W.3d 256, 266 (Tex. 2002). Under the heightened legal sufficiency standard, we assess all the evidence in the light most favorable to the court's finding to determine whether a reasonable trier of fact could have formed "a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* at 264 (quoting Tex. Fam. Code § 101.007). In giving appropriate deference to the court's findings, we "must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so" and "disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id.* at 266. Under the factual sufficiency standard, we "consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding," and find factual insufficiency "[i]f, in light of the entire record, the disputed evidence that a reasonable factfinder could not have

credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction." *Id.*

### III. Analysis

The trial court in this case found that the Department had proven by clear and convincing evidence multiple predicate grounds for termination of Mother's parental rights, and that termination of parental rights was in the best interest of the children. *See* Tex. Fam. Code, §§ 161.001(b)(1)(D), (E), (O), (P), (R), (b)(2). "Only one predicate finding under section [161.001(b)(1)] is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest." *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). Therefore, we will affirm the termination order if the evidence is both legally and factually sufficient to support any statutory ground upon which the trial court relied in terminating parental rights, and the best interest finding. *See In re E.A.G.*, 373 S.W.3d 129, 141 (Tex. App.—San Antonio 2012, pet. denied).

### A. Child Born Addicted

One of the specific predicate grounds found by the trial court was that Mother had been the cause of a child being born addicted to alcohol or a controlled substance, other than a controlled substance legally obtained by prescription. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(R). Mother argues that the evidence is

7

factually and legally insufficient to support the trial court's finding on this predicate ground because the three youngest children did not exhibit "any signs of drug withdrawal, any serious physical problems or psychological problems."

Medical records admitted at trial, as well as testimony presented, support that at least some of the children the subject of this suit did in fact suffer adverse health consequences due to Mother's drug use. Specifically, A.R.S.2 was born with fluid on her heart and suffers delays due to the drugs in her system, which will reportedly continue for some time. Further, A.R.S.1's medical records also explicitly identify "[n]eonatal withdrawal symptoms from maternal use of drugs of addiction" in the child's "Problem Summary."

However, even if the adverse health consequences were disputed, the Family Code does not require any signs of withdrawal or "serious physical problems or psychological problems" to support termination. Rather, it is sufficient to show that a child "exhibit[ed] the demonstrable presence of alcohol or a controlled substance in the child's bodily fluids." Tex. Fam. Code Ann. § 161.001(a)(2)(C); *see also In re L.G.R.*, 498 S.W.3d 195, 202–03 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (holding that observable signs of withdrawal were not required to support termination of rights where mother admitted marijuana use during pregnancy and the child's meconium tested positive); *In re D.D.G.,* 423 S.W.3d at 474–75 (holding

8

that mother's admission of methamphetamine use during pregnancy and child testing positive at birth was sufficient to support termination of rights and that no expert testimony was required to establish the level of drugs in the child's system.); *In re M.N.O.,* No. 09–02–070 CV, 2002 WL 31835026, at *2 (Tex. App.—Beaumont Dec. 19, 2002, no pet.) (not designated for publication) (upholding termination of mother's parental rights to all three of her children on ground that she was the cause of her youngest child being born addicted to cocaine and stating that medical records indicating youngest child tested positive for cocaine at birth were legally and factually sufficient evidence to support the trial court's finding under section 161.001(1)(R)); *In re R.S.O.C.*, No. 02–11–00337–CV, 2012 WL 2923289, at *5 (Tex. App.—Fort Worth July 19, 2012, no pet.) (mem. op.) (upholding termination of mother's parental rights to her three children after Mother testified to using cocaine prior to youngest child's birth and youngest child's medical records indicated child tested positive for cocaine at birth).

Mother admitted having used various illegal drugs during each of her pregnancies. She tested positive at the birth of the youngest twins for cocaine, PCP, and benzos, and she admitted at that time to having last used PCP three days prior to delivery, as well as "smoking" and other drug use. She also acknowledged in her testimony that three of her four children were born with drugs in their systems. The

9

medical records admitted at trial show that C.S.'s meconium tested positive for PCP, A.S.R.1's meconium tested positive for cocaine, benzodiazepines, and PCP, and A.S.R.2's meconium tested positive for cannabinoids and PCP. PCP and cocaine are both identified as controlled substances under chapter 481 of the Health and Safety Code. *See* Tex. Health & Safety Code. Ann. §§ 481.002(5), 481.102(3)(D), (8) (West 2017). Accordingly, under the applicable standard of review and in light of the record as a whole, we conclude that the evidence is both legally and factually sufficient to support the trial court's finding that Mother was the cause of one or more of her children being born addicted to a controlled substance as required by sections 161.001(a) and 161.001(b)(1)(R) of the Texas Family Code. We therefore overrule Mother's fifth issue.

Having determined that the evidence is legally and factually sufficient to support the trial court's finding under section 161.001(b)(1)(R) of the Texas Family Code, we need not address the sufficiency of the evidence to support the trial court's other findings under subpart (b)(1) of the statute. *See In re A.V.*, 113 S.W.3d at 362.

**B. Best Interest**

Section 161.001 requires, in addition to a predicate ground, that the Department prove termination of parental rights is in the best interest of the children. Tex. Fam. Code. Ann. § 161.001(b)(2). In her sixth issue, Mother challenges the

legal and factual sufficiency of the evidence to support the trial court's finding that termination is in the best interest of the children.

"[T]here is a strong presumption that the best interest of a child is served by keeping the child with a parent." *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). In reviewing whether termination is in a child's best interest, we consider a non-exhaustive list of factors: (1) desires of the children; (2) emotional and physical needs of the children now and in the future; (3) emotional and physical danger to the children now and in the future; (4) parental abilities of the individuals seeking custody; (5) programs available to assist these individuals to promote the best interest of the children; (6) plans for the children by these individuals or by the agency seeking custody; (7) stability of the home or proposed placement; (8) acts or omissions of the parent which may indicate that the existing parent-child relationship is improper; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). We also note that evidence supporting termination under the predicate grounds in section 161.001(b)(1) may also be considered as evidence regarding the best interest of the children. *In re L.G.R.*, 498 S.W.3d at 204.

### 1. Mother's History of Drug Use

The record contains ample evidence of Mother's long history of drug abuse, which is a significant factor to which the court was entitled to give great weight. *See Dupree v. Tex. Dep't of Protective and Regulatory Servs.,* 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ). By her own admission, Mother began using drugs at sixteen years old, exposed every one of her children to various controlled substances in utero, and continued to use drugs not only after her children were removed from her custody, but up through at least the month before trial. Mother testified that she had completed a drug treatment program at Spindletop MHMR in 2016 and was in an aftercare program; however, she did not produce any evidence of the completion of that program other than her testimony.[3] However, even crediting that testimony as true, the record shows that Mother continued to use cocaine and PCP well after her purported "graduation" from the drug abuse program and through her claimed weekly attendance in the aftercare program. She continued to use drugs after causing three of her children to be born with controlled substances in their system, after she knew that the Department and the court-appointed guardian *ad litem* were going to

---

[3] Mother did submit an unauthenticated copy of a document purporting to be a certificate from Spindletop MHMR with her brief on appeal; however, we cannot consider documents presented on appeal that were not produced in the trial court and formally included in the appellate record. *See Burke v. Ins. Auto Auctions Corp.* 169 S.W.3d 771, 775 (Tex. App.—Dallas 2005, pet. denied).

seek to have her rights terminated, after she knew the parental rights of the children's fathers had just terminated, and even after she was given deferred adjudication and placed on community supervision for her April 2016, possession charge.

Thus in light of the history, pervasiveness, and severity of Mother's drug use, the trial court could have reasonably inferred that she was not genuinely committed to, or capable of, maintaining a drug-free lifestyle. *See In re O.N.H.*, 401 S.W.3d 681, 684 (Tex. App.—San Antonio 2013, no pet.) (holding that "it is proper to measure a parent's future conduct by his or her past conduct to determine whether termination is in the child's best interest."); *Ray v. Burns*, 832 S.W.2d 431, 435 (Tex. App.—Waco 1992, no writ) (noting that "[p]ast is often prologue.").

### 2. Compliance with Court Ordered Services

Evidence concerning a parent's failure to comply with court-ordered services is also probative as to the question of best interest. *In re E.C.R.*, 402 S.W.3d 239, 249 (Tex. 2013). There was evidence from Jerrica Landry, the Department's caseworker, indicating that Mother did not complete the services offered to her by the Department and ordered by the trial court. For example, Mother did attend some therapy sessions; however, the therapy provider reported to the caseworker that Mother did not successfully complete therapy, did not take responsibility for her actions, and did not learn how to deal with the problems that she had. Mother

13

acknowledged that she did not complete her second drug assessment or counseling, and blamed the caseworker for failing to follow through on those services. The caseworker also testified that Mother did not keep in regular contact with the Department and that there were months when she would have to look for Mother as opposed to Mother contacting her. Taken as a whole, the trial court could have reasonably found that Mother's failure to complete the services on her service plan weighed in favor of termination of parental rights. *See In re S.R.*, 452 S.W.3d 351, 367 (Tex. App.—Houston [14th Dist.] 2014, pet. denied); *see also In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009) (providing that "evidence of improved conduct, especially of short-duration, does not conclusively negate the probative value of a long history of drug use and irresponsible choices.").

### 3. Permanency for the Children

"The need for permanence is the paramount consideration for the child's present and future physical and emotional needs." *Dupree,* 907 S.W.2d at 87. Mother has made clear, both in the trial court and on appeal, that she is actively seeking a "less permanent" solution for the children in order to give her time to work through the process of completing her drug court program "and any other programs which will assist her in kicking her drug addiction." Mother did not articulate any plan for permanence for her children other than her vague request for more time to

work through the process, and she provided no information to the court to demonstrate a serious commitment to establishing stability for the children. For example, although she obtained a lease on an apartment a few months before trial, she still did not have furniture in the apartment at the time of trial.

Further, in addition to extensive testimony about Mother's inability to refrain from drug use prior to trial, the court also heard that the charge for which Mother was given deferred adjudication was a third degree felony and that if she used drugs or in any other way violated her probation, she would be facing two to ten years in prison. These issues relating to the permanency for the children all weigh in favor of the trial court's findings regarding the best interest of the children.

### 4. Desires of the Children and Their Relationship with Current Placement

Finally, the record in this case does not reflect that any of the children spoke directly with the trial court; however, the trial court did hear evidence about the children's placement with Mother's stepfather and their relationship with him, which may be considered when assessing the desires of the children. *See In re J.M.,* 156 S.W.3d 696, 706 (Tex. App.—Dallas 2005, no pet.). The testimony from the Department's caseworker indicates that Mother's stepfather was providing the children with a stable, drug-free environment and that the children were thriving in their placement with him. She further testified that the children loved him and were

15

very attached to him. The children's court-appointed guardian *ad litem* also testified that Mother's stepfather was a "great caregiver" and that it was in the children's best interest to remain with him. Thus, this evidence weighs in favor of the court's finding that termination of rights is in the children's best interest.

In light of the record as a whole, we find that the evidence is both legally and factually sufficient to support the trial court's finding that termination of Mother's parental rights is in the best interest of the children. We overrule issue six, and we affirm the trial court's judgment.

AFFIRMED.

_____
CHARLES KREGER
Justice

Submitted on May 30, 2017
Opinion Delivered July 20, 2017

Before McKeithen, C.J., Kreger and Johnson, JJ.