

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-22-00097-CV

_____

IN THE INTEREST OF S.W., A CHILD

---

On Appeal from the 360th District Court
Tarrant County, Texas
Trial Court No. 360-597845-16

---

Before Sudderth, C.J.; Kerr and Birdwell, JJ.
Memorandum Opinion by Chief Justice Sudderth

# MEMORANDUM OPINION

Following a bench trial, the trial court terminated Appellant R.W.'s (Father's) parental rights to his daughter, S.W.[1]  He appeals that decision, complaining in one issue that the evidence was factually insufficient to justify the trial court's findings that he knowingly placed or allowed S.W. to remain in an environment which endangered her physical or emotional well-being, that he engaged in conduct which endangered S.W.'s physical or emotional well-being, and that he failed to comply with the provisions of the court-ordered service plan.  In his second issue, Father complains that the evidence is factually insufficient to sustain the trial court's finding that termination would be in S.W.'s best interest.

We will affirm.

## I.  Factual Background

S.W. was four years old at the time of trial.  The Department of Family and Protective Services became involved in S.W.'s life about a year earlier, in December 2019, when it came to their attention that H.S., S.W.'s 11-year-old half-brother,[2] had marks on his face which could not be explained.  During the investigation, H.S.

---

[1]We use an alias for the child throughout this opinion. *See* Tex. R. App. P. 9.8(b)(2).

[2]H.S. is not Father's child.

developed new bruises on his face and back, so the Department implemented a "parental-child safety placement" with a friend of S.W.'s paternal grandmother.[3]

In April 2020, investigators noticed bruising to S.W.'s face and the side of her head. Her mother's explanations were unsatisfactory, and the Department—concerned about possible domestic violence and the unexplained injuries to both children—removed both children from the home in May. A couple of months later, the children's mother died while spending the night with Father.[4]

Because the Department had concerns that Father had used methamphetamine in the past, a service plan was implemented that included regular drug testing. Father submitted to some tests early on, but after he tested positive for prescription drugs in November 2020 and could not provide any documentation of a prescription, he never returned for drug testing, despite several requests from his caseworker to do so.

Based on a prior history of domestic violence, Father was also required to attend anger management counseling. However, he failed to complete counseling and failed to complete the eight-hour anger management course. During the period after the children's removal, Father apparently got angry at his mother, picked her up forcefully, and put her in a chair in another room, leaving bruises. According to his mother's account, during this incident, Father took out a knife, held it to the side of

---

[3]The grandmother also acted as a supervisor to the children.

[4]Mother's death was apparently fentanyl-related.

his neck, and "threatened to slit his throat," claiming that "he didn't want to live." He was also arrested for assault of a family member as a result of an altercation with his girlfriend in August 2021.

These events prompted the Department to send Father to a batterer's intervention program. He was required to complete 18 sessions in that program, but because he missed more than four sessions, he was discharged from the program. Visitation with S.W. was also part of the Department's service plan, and although he attended scheduled visits with S.W., he was "consistently late," he arrived "smelling like marijuana," and, on multiple occasions, he fell asleep during visitations.

Father's caseworker was of the opinion that, because Father failed to address the Department's concerns relevant to his domestic violence history and drug abuse, it would be in S.W.'s best interest to have his parental rights terminated. According to the caseworker, there was no more left that could be done to engage Father's interest in his case.

## II. Factual Sufficiency of Endangerment

In his first issue, Father claims that there was factually insufficient evidence[5] to support the trial court's findings of endangerment under Sections 161.001(b)(1)(D)

---

[5]Father does not explicitly indicate whether he challenges either the legal or factual sufficiency of the trial court's findings. However, Father does rely on a factual sufficiency decision in discussing the standard we should use in evaluating his issues. *See In re A.B.*, 437 S.W.3d 498, 502 (Tex. 2014). Thus, we will construe his claims as factual sufficiency challenges.

4

and (E).  *See* Tex. Fam. Code Ann. § 161.001(b)(1)(D), (E).  He also argues that there was factually insufficient evidence that he failed to comply with the service plan ordered by the trial court.  *See id.* § 161.001(b)(1)(O).  We disagree.  Without deciding whether the trial court's decision was correct under Subsections (D) or (O), we affirm the trial court's finding that Father endangered S.W. under Subsection (E).

For a trial court to terminate a parent–child relationship, the Department must prove two elements by clear and convincing evidence: (1) that the parent's actions satisfy one ground listed in Family Code Section 161.001(b)(1); and (2) that termination is in the child's best interest.  *Id.* § 161.001(b); *In re E.N.C.*, 384 S.W.3d 796, 803 (Tex. 2012); *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005).  Evidence is clear and convincing if it "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established."  Tex. Fam. Code Ann. § 101.007; *E.N.C.*, 384 S.W.3d at 802.

In evaluating the evidence's factual sufficiency to support termination, we must perform "an exacting review of the entire record."  *A.B.*, 437 S.W.3d at 500.  Nevertheless, we give due deference to the factfinder's findings and do not supplant the judgment with our own.  *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006).  We review the whole record to decide whether a factfinder could reasonably form a firm conviction or belief that the Department proved the termination grounds.  Tex. Fam. Code Ann. § 161.001(b); *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002).  If the factfinder

5

reasonably could form such a firm conviction or belief, then the evidence is factually sufficient. *C.H.*, 89 S.W.3d at 18–19.

The trial court granted the termination in part on the grounds listed in Subsections (D) and (E) of Section 161.001(b)(1). If a trial court's termination is based on (D) or (E), an appellate court must review one of those grounds (or both if neither withstands appellate review) when raised on appeal—even if other grounds would support termination—because a termination on either of those grounds has collateral consequences for the parent's relationship with other children the parent may have in the future. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(M) (providing that a prior termination under (D) or (E) is a ground for terminating parental rights to a different child); *In re N.G.*, 577 S.W.3d 230, 237 (Tex. 2019) ("[I]f a court of appeals affirms the termination on either [(D) or (E)] grounds, it must provide the details of its analysis."). Accordingly, we begin with ground (E).

This endangerment ground permits termination (assuming termination is in the child's best interest) when the parent "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." Tex. Fam. Code Ann. § 161.001(b)(1)(E). "Endanger" in this context means "to expose to loss or injury, to jeopardize." *In re M.B.*, No. 02-15-00128-CV, 2015 WL 4380868, at *12 (Tex. App.—Fort Worth July 16, 2015, no pet.) (mem. op.) (citing *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531,

533 (Tex. 1987) and *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.)).

The relevant inquiry under (E) is "whether evidence exists that the endangerment of the child's physical well-being was the direct result of the parent's conduct, including acts, omissions, or failures to act." *J.T.G.*, 121 S.W.3d at 125. Termination under Subsection (E) must be based on more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the parent is required. *Id.* However, the parent's conduct need not be directed at the child or actually cause the child injury. "The specific danger to the child's well-being may be inferred from parental misconduct standing alone." *M.B.*, 2015 WL 4380868, at *12. Courts may consider a parent's conduct that occurred outside the child's presence or after the child's removal by the Department. *In re M.S.*, No. 02-20-00147-CV, 2020 WL 6066400, at *4 (Tex. App.—Fort Worth Oct. 15, 2020, no pet.) (mem. op.). "As a general rule, conduct that subjects a child to a life of uncertainty and instability endangers the child's physical and emotional well-being." *M.B.*, 2015 WL 4380868, at *12.

A parent's criminal history—whether it entails conduct, convictions, or imprisonment—is relevant to the question of whether he engaged in an endangering course of conduct. *In re S.R.*, 452 S.W.3d 351, 360–61 (Tex. App.—Houston [14th Dist.] 2014, pet. denied); *A.S. v. Tex. Dep't of Fam. & Protective Servs.*, 394 S.W.3d 703, 712–13 (Tex. App.—El Paso 2012, no pet.). Conduct that

7

includes domestic violence may also be considered in an endangerment analysis. *See In re J.I.T.P.*, 99 S.W.3d 841, 845 (Tex. App.—Houston [14th Dist.] 2003, no pet.). Even if the child is not always present, a factfinder may consider a history of domestic violence in finding an endangering course of conduct. *In re A.V.M.*, No. 13-12-00684-CV, 2013 WL 1932887, at *5 (Tex. App.—Corpus Christi–Edinburg May 9, 2013, pet. denied) (mem. op.).

S.W.'s grandmother (Father's mother) testified that Father could be explosively violent. In recounting the incident with Father where he assaulted her and held a knife to his own throat, the grandmother testified that something had "triggered" his aggression toward her and "because his hands are so strong, he left bruises" on her. She reported the incident to the police the following day "[n]ot to file a charge, but just to get it on the record." According to the grandmother, Father was eventually no-billed by a grand jury.[6] This history of domestic violence supports the trial court's

---

[6]Father argues that grandmother's testimony about being assaulted cannot be considered as "clear and convincing" if a grand jury chose not to indict her. But the grand jury's decision is irrelevant for purposes of our analysis here. At the termination proceeding, the trial court judge was the sole judge of the credibility of the grandmother's testimony. *See In re A.R.M.*, 593 S.W.3d 358, 365 (Tex. App.—Dallas 2018, pet. denied) (mem. op.); *see also In re L.A.F.*, No. 05-12-00141-CV, 2015 WL 4099760, at *7 (Tex. App.—Dallas July 7, 2015, pet. denied) (mem. op.) (holding in termination case that evidence was factually sufficient to show that parent committed act of family violence despite evidence showing that parent was acquitted of that act and stating, "an acquittal is not equivalent to or a determination of actual innocence").

findings that Father endangered S.W.'s physical and emotional well-being and that termination of Father's parental rights was justified under Subsection (E).

A trial court may also consider a parent's failure to complete a service plan as part of its endangering-conduct analysis. *In re R.F.*, 115 S.W.3d 804, 811 (Tex. App.—Dallas 2003, no pet.). This is particularly relevant here where Father, with a history of engaging in domestic violence, was required to attend anger management counseling sessions to address that problem, but he failed to complete the program. Despite his understanding that he was required to complete the service plan "to get [his] kids back," Father did not complete anger management courses and counseling and, as a result, he was unsuccessfully discharged from them. *See In re T.H.*, No. 07-07-0391-CV, 2008 WL 3351948, at *8 (Tex. App.—Amarillo Aug. 12, 2008, no pet.) (mem. op.) (holding mother's failure to attend anger management counseling was a factor in whether she engaged in an endangering course of conduct).

Furthermore, for more than a year, Father failed to complete any required drug testing. When he did last submit to a drug test, the test was positive for a prescription medication for which he could not provide documentation. The factfinder could reasonably infer that Father's failure to comply with his drug-test obligations indicates that he was using drugs while his parental rights were in jeopardy. *See In re W.E.C.*, 110 S.W.3d 231, 239 (Tex. App.—Fort Worth 2003, no pet.).

9

We hold that the evidence, viewed with the appropriate deference, was factually sufficient for the trial court to reasonably form a firm conviction or belief that Father had engaged in conduct that endangered S.W.'s physical or emotional well-being.

Because we have affirmed the sufficiency of the evidence to support the (E) ground, we need not address the (D) ground. *See In re E.C.*, No. 02-20-00022-CV, 2020 WL 2071755, at *5 (Tex. App.—Fort Worth April 30, 2020, no pet.) (mem. op.). We therefore do not address Father's arguments pertaining to that Subsection.[7] We overrule Father's first issue.

### III. Best Interest

In Father's second issue, he attacks the factual sufficiency of the evidence supporting the trial court's finding that termination was in S.W.'s best interest.

Although we generally presume that keeping a child with a parent is in the child's best interest, *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006), the best-interest analysis is child-centered, focusing on the child's well-being, safety, and development, *In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018). In determining whether evidence is sufficient to support a best interest finding, we review the entire record. *In re E.C.R.*,

---

[7]Father also argues that the evidence is factually insufficient to justify the trial court's termination of his parental rights under Subsection (O) (failing to complete service plan) of Family Code Section 161.001(b)(1). Because we held the evidence to be factually sufficient under Subsection (E), we will not address Father's challenge to the ground for termination under Subsection (O). *See In re D.D.G.*, 423 S.W.3d 468, 475 (Tex. App.—Fort Worth 2014, no pet.).

402 S.W.3d 239, 250 (Tex. 2013).  Evidence probative of a child's best interest may be the same evidence that is probative of a Subsection (b)(1) ground.  *Id.* at 249; *C.H.*, 89 S.W.3d at 28; *see* Tex. Fam. Code Ann. § 161.001(b)(1), (2).  We also consider the evidence considering nonexclusive factors that the factfinder may apply in determining the child's best interest:

- the child's desires;

- the child's emotional and physical needs now and in the future;

- the emotional and physical danger to the child now and in the future;

- the parental abilities of the individuals seeking custody;

- the programs available to assist these individuals to promote the child's best interest;

- the plans for the child by these individuals or by the agency seeking custody;

- the stability of the home or proposed placement;

- the parent's acts or omissions that may indicate that the existing parent–child relationship is not a proper one; and

- the parent's excuse, if any, for the acts or omissions.

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *see E.C.R.*, 402 S.W.3d at 249 (stating that in reviewing a best-interest finding, "we consider, among other evidence, the *Holley* factors"); *E.N.C.*, 384 S.W.3d at 807.  These factors do not form an exhaustive list, and some factors may not apply to some cases.  *C.H.*, 89 S.W.3d at 27.  Furthermore, undisputed evidence of just one factor may suffice in a particular case to

support a finding that termination is in the child's best interest. *Id.* On the other hand, the presence of paltry evidence relevant to each factor will not support such a finding. *Id.*; *In re J.B.*, No. 02-18-00034-CV, 2018 WL 3289612, at *4 (Tex. App.—Fort Worth July 5, 2018, no pet.) (mem. op.).

Children need long-term safety and stability; providing for a child's physical and emotional needs is of paramount importance. *See* Tex. Fam. Code Ann. § 263.307(a) ("[T]he prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest."). For S.W., Father poses a danger to her because of his history of domestic violence.

Here, the trial court was entitled to consider whether Father's history of assaultive conduct against his mother and girlfriend was relevant to whether he would be a danger to S.W. now and in the future—and whether someone with that history could adequately provide for S.W.'s emotional and physical needs. *See In re A.B.*, No. 01-16-00289-CV, 2016 WL 5110134, at *5 (Tex. App.—Houston [1st Dist.] Sept. 20, 2016, no pet.) (mem. op.) (holding that father's continued criminal conduct supported best interest finding). Further, nothing in the record would indicate that Father's violent tendency had improved during the pendency of this case. This history is particularly relevant where there was evidence that Father apparently saw no merit in participating meaningfully in anger management counseling. *See In re I.G.*, 383 S.W.3d 763, 772 (Tex. App.—Amarillo 2012, no pet.) (holding that father's past acts of domestic assault and his inability to control his anger provided inferential evidence of

12

his future conduct such that child's best interest would be negatively affected in the future). Thus, the trial court could have formed a firm belief that Father's past acts of domestic violence could affect S.W.'s emotional and physical needs now and in the future.

As to the Department's plans for S.W., her current placement is adoption-motivated. The stability of S.W.'s placement supports the trial court's finding that termination was in S.W.'s best interest. By contrast, Father lives with S.W.'s grandmother, and she had been excluded as a possible caregiver for S.W. because she was suspected of having hurt S.W. during the Family-Based Safety Services period when S.W. was in her home.[8] *See id.* (holding that lack of stability in parent's mother's home due to grandmother's previous CPS history was relevant to whether parent's plans for child was in child's best interest).

As to whether Father's parent–child relationship is a proper one, his history of domestic violence supports the trial court's finding that reunification with Father would not be in S.W.'s best interest. *See T.W. v. Tex. Dep't of Fam. & Protective Servs.*, No. 03-18-00347-CV, 2018 WL 4100799, at *6 (Tex. App.—Austin Aug. 29, 2018, no pet.) (mem. op.) (holding that history of domestic violence was relevant to whether the parent–child relationship was a proper one).

---

[8]Father's caseworker was also concerned that his mother was "not taking protective actions to keep herself safe" from Father's violent outbursts.

Regarding available programs that would have assisted Father to promote the child's best interest, he failed to take advantage of the programs and plans offered by the Department, including failing to meaningfully participate in anger management counseling when the evidence showed that he had a particular and dangerous problem with anger management. *See In re M.H.*, No. 02-15-00263-CV, 2016 WL 489780, at *14 (Tex. App.—Fort Worth Feb. 5, 2016, no pet.) (mem. op.) (holding that father's refusal to continue anger management counseling was relevant to best interest finding and further noting that the "fact-finder could have reasonably concluded that Father's anger issues remained unresolved"). In other words, when given the chance, Father avoided working on improving his anger management skills—skills that would have helped him develop a proper relationship with his daughter. We therefore hold that the evidence is factually sufficient to sustain the finding that terminating Father's parental rights was in S.W.'s best interest.

Given his history of domestic violence against both his mother and his girlfriend and the injuries sustained by S.W., the trial court was justified in putting S.W.'s safety first and determining that termination was in her best interest.[9]

---

[9]Father argues that the evidence shows H.S., not Father, was more likely to have been the person who hit S.W. and gave her bruises, and it would be wrong to terminate Father's parental rights on the basis that S.W. is in danger from him. This argument misses the mark. With regard to endangerment, the issue is whether danger to the child may be *inferred*—the parent's conduct need not be directed *at* the child. *See M.B.*, 2015 WL 4380868, at *12.

14

## IV.  Conclusion

Having overruled Father's issues, we affirm the trial court's judgment.


/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Delivered:  August 25, 2022